UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY GLOSTON-PHELPS ET AL. | CIVIL ACTION |
| VERSUS | NO. 17-11844 |
| CRAIG WEBRE | SECTION: "H" |

## ORDER AND REASONS

Before the Court are Cross Motions for Summary Judgment. For the following reasons, Defendant's Motion (Doc. 31) is **GRANTED**, and Plaintiffs' Motion (Doc. 33) is **DENIED**.

## BACKGROUND

Plaintiffs allege that the Lafourche Parish Sheriff, Defendant Craig Webre, violated Louisiana law and the U.S. Constitution by over-deducting wages that Plaintiffs earned as inmates participating in Lafourche Parish's work release program. The material facts are not in dispute. The main legal question involves the interpretation of state law. On January 15, 2019, Defendant moved for summary judgment on all Plaintiffs' claims. Plaintiffs oppose and moved for cross-summary judgment.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[7] The Court

---

[1] FED. R. CIV. P. 56.
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] *Id.* at 248.
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[7] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

Louisiana Revised Statutes Section 15:1111 governs inmate work release programs operated by the state's Department of Public Safety and Corrections ("DOC"). The statute provides that every inmate participating in a work release program "shall be liable for the cost of his room, board, clothing, and other necessary expenses incident to his employment or placement unless other means of payment are approved by the department."[10] The statute further provides:

> Deductions for room, board, and other administrative and incidental costs resulting from participation in a work release program authorized by this Section shall not exceed seventy percent of the gross wages received by the inmate. This deduction rate shall be established by the secretary of the Department of Public Safety and Corrections.[11]

The parties agree that the DOC established a deduction rate pursuant to the above statutory authorization and that the Sheriff's Office's Handbook ("Handbook") covering its work release program described the applicable deduction rate as follows: the room and board deduction shall not exceed 64%

---

[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] LA. REV. STAT. § 15:1111(D).
[11] *Id.* § 15:1111(H)(1).

3

of gross wages or $451.50 per work week (7 consecutive 24-hour days), whichever is less.[12]

The claims in this suit depend entirely on the interpretation of the deduction rate described above. The sole issue is whether the "per work week" language in the policy obligates the Sheriff's Office to calculate deductions weekly. Plaintiffs argue that it does. Specifically, Plaintiffs argue that the Sheriff's Office may only deduct from a prisoner's *weekly* earnings the lesser of 64% of gross wages or $451.50. What the Sheriff's Office unlawfully did, Plaintiffs argue, is calculate the deduction from a *bi-weekly* paycheck. According to Plaintiffs, the Sheriff may not deduct from a bi-weekly paycheck the lesser of 64% of two weeks' worth of gross wages or $901—$451.50 times two. The reason the deduction method matters is that if an inmate earns more than $705 in the first week but less than $705 in the second week, the Sheriff's deduction method effectively results in more than $451.50 being deducted from wages earned during the first week.[13]

The Court will now address the Cross Motions for Summary Judgment, analyzing Plaintiffs' federal claims first before turning to their state claims.

---

[12] *See* Defendants' Uncontested Material Fact No. 10, Doc. 31-1 at 2–3. *See also* Docs. 31-3 at 23 (describing the DOC's policies regarding deductions from work release participant paychecks); 31-6 (excerpt from the Lafourche Parish Sheriff's Office Transitional Work Program).

[13] *See* Doc. 33-2 at 4 (explaining the earnings point at which the different deduction methods results in an allegedly unlawful deduction). The following hypothetical illustrates the issue. Assume Prisoner works 80 hours in Week A and 10 hours in Week B earning $10 an hour. Plaintiffs' deduction method would result in deductions of $451.50 for Week A (the lesser of $512—64% of $800—and $451.50) and $64 for Week B (the lesser of $64—64% of $100—and $451.50) for a total deduction of $515.50. Meanwhile, the Sheriff's deduction method would result in a total deduction of $576—the lesser of $576 (64% of 900) and $901 ($451.50 times two). It is this difference in accounting methods—$60.50 in the hypothetical—that Plaintiffs allege was unlawfully withheld from their paychecks. It also is worth noting that an 80-hour work week is not unheard of for inmates, like Plaintiff Gloston-Phelps, who sometimes worked seven straight 12-hour days in the program.

I. **Federal Claims**

Plaintiffs' seek relief pursuant to 42 U.S.C. § 1983 on the ground that Defendant Webre violated the Fourteenth Amendment. Specifically, Plaintiffs allege that Webre violated both the substantive and procedural components of the Fourteenth Amendment's Due Process Clause by over-deducting room and board expenses from Plaintiffs' paychecks and then failing to provide adequate pre- or post-deprivation process to remedy Plaintiffs' grievances. Defendant argues that neither claim can survive summary judgment. The Court will consider each claim in turn.

    a. **Substantive Due Process**

An executive official violates a person's Fourteenth Amendment substantive due process rights when the official's conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[14] The burden "to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme."[15] The Supreme Court's "test for the substantive component of the due process clause prohibits 'only the most egregious official conduct,' and will rarely come into play."[16]

Here, the Sheriff's alleged conduct is not conscience-shocking. At worst, the Sheriff interpreted an ambiguous policy in a way that was more convenient for and favorable to his office. Such behavior is neither stunningly arbitrary

---

[14] *See* Reyes v. N. Texas Tollway Auth., 861 F.3d 558, 562 (5th Cir. 2017) (explaining that the Fifth Circuit applies the "shock the conscience" standard instead of rational basis when executive conduct is involved).

[15] Doe *ex rel.* Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 868 (5th Cir. 2012) (quoting J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010)).

[16] Jordan v. Fisher, 823 F.3d 805, 812–13 (5th Cir. 2016), *as revised* (June 27, 2016) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

nor capricious. There is no genuine dispute of material fact regarding Plaintiffs' substantive due process claims, and they cannot survive summary judgment.

### b. Procedural Due Process

The Fourteenth Amendment's Due Process Clause prohibits governmental actors from depriving "any person of life, liberty, or property, without due process of law."[17] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[18]

In this case, Plaintiffs allege that the Sheriff deprived them of income they earned without providing Plaintiffs a meaningful way to challenge the earnings deductions as unlawful. The undisputed record shows, however, that the Sheriff has in place a grievance procedure for complaints regarding the work release program.[19] Pursuant to the policy outlined in the Handbook, an inmate may make a complaint on a particular form and submit that form to "the staff member having direct control over the issue/area of concern. Once the matter is investigated, a response will be sent to the offender. If the offender is not satisfied with the outcome he may request a review with Administration."[20] If at the end of that process the inmate "is still not satisfied," he may file a written and signed grievance that begins a new three-step administrative review process.[21]

---

[17] U.S. Const. amend. XIV, § 1.
[18] Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original).
[19] Plaintiffs' Uncontested Material Fact No. 6, Doc. 33-1 at 2 ("Defendant provided a process for the prisoners to complain about the deductions taken from their paychecks in writing.")
[20] Doc. 33-5 at 16.
[21] *Id.* at 16–17.

Plaintiffs respond that the above-described process is insufficient to satisfy their right to due process for three reasons: (1) even though a grievance procedure exists, it did not provide a meaningful mechanism of review in this case because Plaintiff Gloston-Phelps submitted a complaint that was allegedly ignored by the Sheriff's Office; (2) the process itself is flawed because "there is no hearing (not even administrative) in any sense of the word;" and (3) the process is unfair because "the Sheriff [acts as] . . . proverbial judge, jury and executioner."[22]

Plaintiffs' arguments are unconvincing. "Standard analysis under the Due Process Clause proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."[23]

The Fifth Circuit has not decided whether prisoners have a protected property interest in income deducted from their work release wages to cover room and board expenses. Under analogous facts, however, the Eighth Circuit has held that prisoners lack a constitutional property interest in such deductions.[24] In *Christiansen v. Clarke*, the Eight Circuit reasoned that a prisoner did not possess a constitutional property interest in room and board deductions from his work release wages because work release participation under Nebraska law was a privilege, not a right; Nebraska law authorized the deduction of room and board expenses from a prisoner's work release wages;

---

[22] Doc. 33-2 at 10.
[23] Caliste v. Cantrell, 329 F. Supp. 3d 296, 310 (E.D. La. 2018) (Fallon, J.) (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)).
[24] Christiansen v. Clarke, 147 F.3d 655, 657 (8th Cir. 1998).

7

and thus the prisoner lacked a constitutional right to the full amount of his work release salary.[25]

The same is true here. Louisiana law provides that participation in a work release program is a privilege and that deductions for room and board expenses are permissible.[26] Because this Court finds the Eighth Circuit's reasoning in *Christiansen* persuasive, Plaintiffs in this case lack a due process property interest in the income deducted from their wages for room and board expenses. Accordingly, Plaintiffs' procedural due process claim fails.

Even if this Court were to hold that Plaintiffs possessed a sufficient due process property interest in the income deducted from their wages, their claim still would fail under the second prong of the procedural due process analysis. The second prong—determining whether a state's procedures are constitutionally sufficient—requires courts to analyze three factors propounded by the Supreme Court in *Mathews v. Eldridge*.[27] The three factors include:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[28]

The private interest affected by the Sheriff's deductions in this case is minimal. Plaintiffs do not seek all the money deducted from their paychecks by the Sheriff for room and board expenses. Instead, they seek only the difference in what they would have earned if the Sheriff had calculated his

---

[25] *Id.*
[26] *See* LA. REV. STAT. § 15:1111.
[27] Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
[28] *Id.*

deductions using weekly instead of bi-weekly paychecks. Plaintiffs concede that the amount in question is $70.74 for Plaintiff Gloston-Phelps and $86.67 for Plaintiff Warren.[29] Those figures are relatively small,[30] especially considering that the inmates could earn several hundred dollars bi-weekly—after deductions for taxes and expenses—in the work release program.[31]

The risk of an erroneous deprivation through the procedures used by the Sheriff is difficult to quantify. On the one hand, it is unclear whether an erroneous deprivation even occurred in this case. Over-deductions only occurred if the Sheriff violated the regulations at issue, and it is far from clear whether a violation occurred. On the other hand, because the deduction process was practically automatic, if in fact it was being done unlawfully, then the risk of an erroneous deprivation was virtually certain under the particular set of facts presented by the Plaintiffs. Still, precisely because such a specific set of facts needs to arise to trigger the situation in which an alleged error can occur, this factor weighs against finding that the Sheriff's procedures are constitutionally deficient. This is especially true given the existence of the post-deprivation grievance procedures available to inmates in the program.[32]

---

[29] Doc. 33-2 at 5.

[30] *See* Woodard v. Andrus, 649 F. Supp. 2d 496, 513 (W.D. La. 2009) (Vance, J.) ("[T]he plaintiffs' interest in amounts totaling several hundred to several thousand dollars remains relatively small.").

[31] The Court bases this figure on records submitted by Gloston-Phelps. *See* Doc. 33-6.

[32] Defendant argues that post-deprivation Louisiana tort remedies available to Plaintiffs are sufficient to overcome Plaintiffs' Due Process claims under the *Parratt/Hudson* doctrine. Doc. 31-2. *See* Parratt v. Taylor, 451 U.S. 527 (1981), *overruled in part by* Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984). The *Parratt/Hudson* doctrine, however, is inapplicable to the facts of this case. "The *Parratt/Hudson* doctrine dictates that a state actor's *random and unauthorized deprivation* of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." Brooks v. George Cty., Miss., 84 F.3d 157, 165 (5th Cir. 1996) (emphasis in original). "[W]here employees are acting in accord with customary procedures, the 'random and unauthorized' element required for the application of the *Parratt/Hudson* doctrine is simply not met." *Id.* (citing Alexander v. Ieyoub, 62 F.3d 709, 713 (5th Cir. 1995)). Here, because Plaintiffs allege that

Finally, the Government's interest weighs against requiring additional procedural safeguards. This Court recognizes the Sheriff's interest in operating a cost-effective work release program. Here, Plaintiff Gloston-Phelps met with an employee of the Sheriff's accounting office to discuss his complaint about the deductions. She listened to his complaint and explained why the Sheriff calculated the deductions using bi-weekly figures: because that's how the Sheriff received pay stubs from the inmates' employers.

Overall, application of the *Mathews* factors weighs in favor of finding that the procedures provided by the Sheriff's Office were constitutionally sufficient. It is unclear to this Court how additional pre-deprivation or post-deprivation procedures would have prevented this dispute from ending up in court. The dispositive question in this case is not about due process. It is about the interpretation of a less-than-clear set of state and local laws and regulations. Regardless, Plaintiffs have failed to show that they have a sufficient property interest in the allegedly erroneous deductions for due process purposes. Even if they had, this Court finds that the procedures provided by the Sheriff's Office are constitutionally sufficient for due process purposes. Accordingly, there is no genuine dispute of material fact about whether Plaintiffs' procedural due process rights were violated by the Sheriff. They were not.

## II. State Claims

As an initial matter, it is unclear to this Court whether Plaintiffs have adequately alleged state law claims. In their Opposition to Defendants' Motion, Plaintiffs state: "While the Plaintiffs' have not expressly stated their state law

---

Defendant acted pursuant to a policy of relying on weekly rather than bi-weekly paychecks for the deductions, any alleged violation occurred pursuant to an official policy, not a random and unauthorized act. Accordingly, this Court does not rely on the *Parratt/Hudson* doctrine in reaching its decision.

claims other than to note them in the heading of Claim for Relief, the facts pled do state causes of action under state law."[33] The heading of Plaintiffs' First Amended Complaint references violations of Louisiana Revised Statutes § 23:631 and Louisiana Civil Code articles 1758, 1986, and 1995.[34] Plaintiffs have abandoned their § 23:631 claims.[35] The referenced code articles cover the general effects of obligations.[36] Plaintiffs fail to explain how their allegations could support a claim for breach of an obligation under the Louisiana Civil Code. Even giving Plaintiffs the benefit of the doubt, however, there is a more fundamental issue with Plaintiffs' alleged state law claims.

Plaintiffs' claims before this Court are premised upon federal question jurisdiction. As explained above, this Court is granting summary judgment in Defendant's favor on Plaintiffs' federal claims. That leaves only Plaintiffs' state law claims before this Court.

Under 28 U.S.C. § 1367, this Court could continue to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The statute, however, also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or

---

[33] Doc. 33-2 at 10.
[34] Doc. 13 at 9.
[35] Doc. 33-2 at 10 ("To be clear, Plaintiffs do not seek relief under FSLA or 23:631 as no such relief is available for the only two plaintiffs at issue.").
[36] *See* LA. CIV. CODE arts. 1758, 1986, 1995.

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[37]

The Fifth Circuit has held that in determining whether to relinquish jurisdiction over pendent state law claims, a court should "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity."[38]

Application of the statutory factors weighs in favor of dismissing Plaintiffs' state law claims. To the extent Plaintiffs have alleged state law claims, those claims involve a complex issue of Louisiana law that has yet to be interpreted by any Louisiana court. The parties recognized in their briefs that the predominant issue in this case has always been the interpretation of the state and local regulations. Further, this Court has dismissed all federal claims over which it had original jurisdiction. Even assuming this case does not present one of exceptional circumstances, the statutory factors weigh in favor of declining to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Such a decision also is in line with judicial economy, convenience, fairness, and comity. Because Plaintiffs have yet to even clarify their state law claims, this Court has yet to devote significant resources to analyzing them. The refusal to exercise supplemental jurisdiction over the state law claims will not result in duplicative efforts. In addition, "comity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determinations of state law as are state courts."[39] For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

---

[37] 28 U.S.C. § 1367(c).
[38] Enochs v. Lampasas Cty., 641 F.3d 155, 158–59 (5th Cir. 2011).
[39] *Id.* at 160 (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**. Plaintiffs' federal claims are **DISMISSED** with prejudice. Plaintiffs' state claims, however, are **DISMISSED** without prejudice.

New Orleans, Louisiana this 24th day of April, 2019.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**